UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMY S. JAKUBOVSKY,

    Plaintiff,

v.                                                                                                         Case No. 08-C-206

BLACKJACK SKI CORPORATION and
AMERICAN HOME ASSURANCE COMPANY,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Amy S. Jakubovsky sued defendants Blackjack Ski Corporation ("Blackjack") and its insurer, American Home Assurance Company ("AHA")for personal injuries she sustained as a result of a skiing accident at Blackjack Ski Resort. With the parties' citizenship lying in different states, this Court has jurisdiction under 28 U.S.C. § 1332. The defendants now move for summary judgment based upon Michigan's Ski Area Safety Act of 1962, Michigan Compiled Laws § 408.321 *et seq*. For the reasons stated below, the motion will be granted.

**BACKGROUND**

Jakubovsky is a resident of Wisconsin and Blackjack is a Michigan corporation with a principal place of business in Bessemer, Michigan, where it operates the Blackjack Ski Resort. (PPFOF ¶¶ 1-3; DPFOF ¶¶ 1-3.) Jakubovsky and some of her family members skied at Blackjack Ski Resort on January 27, 2007. Most of her family were advanced or experienced skiers or

snowboarders, and Jakubovsky was an established skier with expert skill and knowledge of skiing by Midwestern standards. (PPFOF ¶¶ 5-6.)

Sometime after lunch Jakubovsky and her sister, Mary Van Lanen, decided to ski down River Drive, which is a "blue square" or "more difficult" run. (*Id* ¶¶ 7-8.) River Drive and another run, Broad Axe, begin together but later split into two runs separated by a wooded area. (PPFOF ¶¶ 9-10.) As Jakubovsky was skiing down River Drive, a snowboarder emerged at a high rate of speed from the wooded area to the right side of River Drive and struck her. The collision propelled Jakubovsky into a wooden fence on the left side of River Drive. The fence, constructed of four-by-one inch horizontal boards nailed to four-by-four inch posts set into the ground, ran along the left side of River Drive; on the other side of the fence there was a significant drop-off. Upon impact, several of the horizontal boards of the fence broke, but Ms. Jakubovsky sustained extensive injuries to her back and ribs upon impact with the fence post. The snowboarder continued on his way or fled after the accident, and Jakubovsky was taken to the hospital by ambulance. Ms. Jakubovsky commenced this action to recover damages for her injuries.

In its motion for summary judgment, Blackjack contends that it is immune from liability for the injuries Ms. Jakubovsky sustained under Michigan's Ski Area Safety Act ("the SASA") which, *inter alia*, provides that skiers are deemed to accept the dangers inherent in the sport of skiing, including injury from skier-to-skier collisions. M.C.L. § 408.342(2). Since the SASA also preempts common-law premises liability doctrines, Blackjack argues that plaintiff's common law claims are without merit. Because plaintiff's injuries resulted from a risk inherent in the sport of skiing and because Blackjack did not violate any of its duties under SASA, Blackjack contends it has no liability as a matter of law.

2

Plaintiff claims that Blackjack is not entitled to immunity under SASA because it violated the SASA by failing to warn skiers of the unmarked trail which the snowboarder took prior to the accident. Even if Blackjack's conduct does not constitute a violation of the SASA, plaintiff contends that Blackjack is nevertheless liable because her injuries were in fact caused by Blackjack's negligence. Plaintiff also argues that a ski hill operator's immunity under SASA does not apply to the injuries she sustained from colliding with a fence. Finally, plaintiff claims that summary judgment is inappropriate as common law standards of negligence are applicable regarding Blackjack's construction of the fence.

## ANALYSIS

**A.    SASA Liability**

Michigan's Ski Area Safety Act provides that skiers assume the risk arising from "collisions . . . with other skiers":

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

Mich. Comp. Laws § 408.342(2) (2007). The SASA is intended to protect the safety of skiers, but also to reduce litigation and contribute to the "economic stabilization of an industry which contributes substantially to Michigan's economy." *Shukoski v. Indianhead Mountain Resort, Inc.*, 166 F.3d 848, 850 (6th Cir. 1999). The legislative intent underlying the SASA was set out by the Michigan Court of Appeals in *Grieb v. Alpine Valley Ski Area*:

3

> The Legislature perceived a problem with respect to the inherent dangers of skiing and the need for promoting safety, coupled with the uncertain and potentially enormous ski area operators' liability. Given these competing interests, the Legislature decided to establish rules in order to regulate the ski operators and to set out ski operators' and skiers' responsibilities in the area of safety. As part of this reform, the Legislature has decided that all skiers assume the obvious and necessary dangers of skiing. This is a rational solution for limiting ski area operators' liability and promoting safety.

155 Mich.App. 484, 400 N.W.2d 653, 655 (1986). In furtherance of this intent, the SASA has been construed as generally granting absolute immunity to ski resorts for injuries arising out of the obvious and necessary dangers inherent in the sport, including collisions with other skiers.

In *Grieb*, for example, the court of appeals affirmed the dismissal of an action against a ski resort brought by a skier who was injured when she was struck from behind by an unknown skier, concluding that the SASA "clearly and unambiguously provides that an injury resulting from a collision with another skier is an obvious and necessary danger assumed by skiers." *Id.* at 654-55. Likewise, in *McCormick v. Go Forward Operating Ltd. P'ship*, the court affirmed the trial court's summary dismissal of an action for injuries sustained by a skier while trying to avoid a collision with a skier who had fallen in front of her as she exited a chair lift. The court explained:

> The language of the statute itself establishes that plaintiff's injury comes within the immunity provisions. The statute says that collision with another skier comes within the dangers that are necessary and obvious. It does not exclude the ski lift exit area. Therefore, because plaintiff's injury arose from the collision with another skier, or the attempt to avoid such a collision, it comes within the immunity provision of the statute. That is, by statutory definition, any collision with another skier constitutes a necessary and obvious danger for which defendant is immune. In short, the location of the collision or fallen skier is irrelevant.

235 Mich. App. 551, 599 N.W.2d 513, 515 (1999) (footnote omitted).

And in *Hakari v. Ski Brule, Inc.*, the trial court granted the defendant resort's motion for summary disposition of the plaintiff's action for injuries she sustained as a result of a collision with

4

Case 1:08-cv-00206-WCG   Filed 12/29/09   Page 4 of 13   Document 59

another skier, notwithstanding the plaintiff's allegations that defendant resort had negligently adjusted the boots and bindings that she purchased from its ski shop and that the defendant failed to supervise the actions of other skiers on the ski slope. 230 Mich.App. 352, 584 N.W.2d 345 (1998). Indeed, the plaintiff in *Hakari* did not even challenge the trial court's dismissal of her initial complaint and argued on appeal only that the court had erred in denying her leave to file an amended complaint which alleged that the resort had violated SASA by failing to obtain proper identification of the skier who collided with her. The court of appeals affirmed the trial court's denial, finding the intended amendment futile. *Id.* at 348.

While the foregoing cases all involved collisions with skiers, snowboarders are included within the definition of a "skier" under the SASA, as well. *Shukoski*, 166 F.3d at 851; *see also Barrett v. Mount Brighton, Inc.*, 474 Mich. 1087, 712 N.W.2d 154 (Mich. 2006) (plaintiff engaged in alpine skiing accepted the risks associated with all types of skiing, including snowboarding). Thus, it would appear, at least on the surface, that Blackjack is immune.

In response to Blackjack's motion, however, plaintiff contends that Blackjack is not entitled to summary judgment because there is a factual dispute as to whether it complied with the duties owed by a ski area operator under the SASA. As noted above, the SASA also has as one of its purposes the safety of skiers, and in furtherance of this purpose, imposes certain duties on operators of ski resorts. More specifically, the SASA requires ski area operators to "[m]ark the top of or entrance to each ski run, slope, and trail which is closed to skiing, with an appropriate symbol indicating that the run, slope, or trail is closed . . . ." Mich. Compl. Laws § 408.326a(d). Plaintiff argues that Blackjack violated this provision by failing to mark as closed the entrance to the wooded

5

area from which the unidentified snowboarder emerged before colliding with her. Since the SASA provides ski area operators who violate the SASA "shall be liable for that portion of the loss or damage resulting from that violation," Mich. Compl. Laws § 408.344, plaintiff contends Blackjack may be liable for her injuries.

The problem with plaintiff's argument is that the area from which the snowboarder emerged was not a ski run, slope or trail. Although the SASA itself does not define the terms "ski run," "slope" or "trail," the plain meaning of the terms would be the routes which are intended and designed by the operator to be used by the skiers to ski down the hill. The fact that some skiers violate the rules of the resort and descend the hill by other routes not intended for skiing does not transform those areas into ski runs, slopes or trails. The Michigan Court of Appeals rejected this very argument in *Barr v. Mount Brighton, Inc.*, 215 Mich. App. 512, 546 N.W.2d 273 (1996).

In *Barr* the plaintiff was severely injured when he struck a tree while attempting to ski down the hill through a cluster of trees located between two chair lifts. The plaintiff asserted that the operator considered the area "out-of-bounds" and closed to skiing because of the danger posed by the cluster of trees, but failed to mark the area as closed to skiing. Because the operator failed to mark the "run" closed as required by § 408.326a(d) of the SASA, the plaintiff argued the operator was in violation of the SASA and therefore not entitled to the immunity the Act otherwise would have provided. In reversing the trial court's decision denying the operator's motion for summary judgment, the *Barr* court rejected the plaintiff's contention that the operator had violated the SASA by failing to mark as closed an area that was never intended for use as a ski route down the hill, explaining:

6

> There are any number of means by which a skier on top of a hill can ski down that hill. We do not construe this provision to require a ski area operator to affirmatively mark as "closed" each one of the conceivable means by which a skier can ski down a hill. The result of such an obligation would be the encirclement of the top of a hill with "closed" signs, interrupted, perhaps, by one or two signs indicating that an open trail exists.

546 N.W.2d at 277. To avoid such an absurd result, the court construed § 408.326a(d) "to require only that the operator mark as 'closed' those trails in the ski area that normally are open to skiing but that are, at the moment, closed for one reason or another." *Id*; *see also Long v. Bogus Basin Recreational Ass'n, Inc.*, 125 Idaho 230, 869 P.2d 230, 233 (Idaho 1994) ("Affirmative action by the operators of the ski area, not the tracks of other skiers, designates runs. The ski area designates runs by grooming and maintaining them as well as by marking them with signs.").

Plaintiff attempts to distinguish *Barr* from this case noting that Blackjack had attempted to block access to the wooded area in the past and was therefore aware before she was injured that the area was used by snowboarders. Plaintiff concedes that if Blackjack had never attempted to close the area, "the trail would be a non-distinct route" and thus, under *Barr,* § 408.326(d) would not apply. But by attempting to close the area, plaintiff argues that Blackjack "impliedly admits that the area is a 'trail' as designated under SASA." (Pl.'s Br. in Opp. at 11.)

Plaintiff's argument is unpersuasive. The fact that Blackjack recognized dangers associated with reckless skiers attempting to navigate the woods and sought to abate the activity does not transform the area into a ski trail for purposes of the SASA. To adopt such a rule would encourage ski area operators to take no steps to prevent such skiers from skiing in areas they knew to have hidden risks and dangers, for fear that by doing so, they would inadvertently create additional obligations for such areas under the SASA. *See* Mich. Compl. Laws § 408.326a(b) (requiring

7

operator to mark with a visible sign or other warning device the location of any hydrant or similar fixture or equipment used in snow-making operations located on a ski run); § 408.326a(c) (requiring operators to mark the top of or entrance to each ski run, slope, and trail to be used by skiers for the purpose of skiing, with an appropriate symbol indicating the relative degree of difficulty of the run, slope, or trail); and § 408.326a(e) (requiring operator to display all runs or trials on its trail board). Neither the language of the statute, nor logic, supports such an interpretation.

Here, there is no dispute that the area from which the snow boarder who collided with plaintiff emerged was not designed or intended as a ski run, slope or trial. Michael Cameron, the general operations manager of the ski resort from 2005 through 2008, characterized the area as "a steep, rocky, forested, out-of-bounds area which at no time was ever open as a ski slope or trail." (Aff. of Michael Cameron ¶ 3.)[1] Richard Steiger, Blackjack's corporate secretary and part owner of the ski resort since its founding in 1977, characterized the area as "a rocky, forested cliff area which is a closed area on the hill and not a ski slope or trail, and is an area which never was open at any time as a ski slope or trail." (Aff. of Richard Steiger ¶ 8.) Even plaintiff's siblings indicated that the area was an out-of-bounds area. Mary Van Lanen, Jakubovsky's sister, noted that she saw the snowboarder come "out of the wood line" and that the area from which he came was a "chute" which was clearly not a ski trail. (Van Lanen Depo. 26:9-13; 36:4-10.) Tom Jakubovsky, plaintiff's brother, testified that the area to the right of the trail "was wooded with a ridge and [had] . . . some elevation to it," leading him to conclude the area was obviously out of bounds. (Tom Jakubovsky

---

[1] The affidavit actually has two paragraphs labeled was "3." This citation refers to the second such paragraph, appearing at page 2 of the document.

8

Depo. 34:21-35:20, Doc. # 56 at 4-5.) Jamie Graper, another of Jakubovsky's sisters, testified that based upon her after-the-fact viewing of the wooded area, she "would never think that anything besides an animal would come out of there. . . . [I]t does not look skiable at all." (Graper Depo. 13:9-16; Doc. # 56 at 6.) The photographs taken of the area approximately three weeks after the accident by Graper also demonstrate that the area from which the snowboarder emerged was out-of-bounds. (Nell Decl. Ex. F.)

I conclude from the foregoing that the area from which the snowboarder emerged prior to striking plaintiff was not a ski run, slope or trail within the meaning of the SASA. It thus follows that Blackjack did not violate the Act by failing to mark the area as closed.

**B. Common Law Liability**

Plaintiff also argues that Blackjack had a common law duty to take action to prevent skiers from using the area as a run or at least warn skiers of the risk this unauthorized activity posed. She notes that Blackjack was on notice of the problem of snowboarders attempting to ski through the wooded area, and even blocked its entrance at one point with a barrier. Blackjack failed to replace the barrier after it was removed by some of the resort's patrons. Under these circumstances, plaintiff contends that a jury should decide whether Blackjack is liable for failing to take further actions to prevent skiers from using the out-of-bounds area or failing to warn other skiers of the risk of collision.

This argument, however, ignores the fact that the SASA preempts the common law and is the sole basis for operator liability under Michigan law. Plaintiff's effort to hold Blackjack liable for the actions of the anonymous snowboarder who collided with her is precisely what the SASA was intended to prevent. The Michigan Supreme Court made just this point in rejecting a skier's

9

argument in *Anderson v. Pine Knob Ski Resort, Inc.,* that a shack housing the time-keeping equipment on the downhill racing course with which he collided was negligently constructed:

> To adopt the standard plaintiff urges would deprive the statute of the certainty the Legislature wished to create concerning liability risks. Under plaintiff's standard, after any accident, rather than immunity should suit be brought, the ski-area operator would be engaged in the same inquiry that would have been undertaken if there had been no statute ever enacted. This would mean that, in a given case, decisions regarding the reasonableness of the placement of lift towers or snow groomers, for example, would be placed before a jury or judicial fact-finder. Yet it is just this process that the grant of immunity was designed to obviate. In short, the Legislature has indicated that matters of this sort are to be removed from the common-law arena, and it simply falls to us to enforce the statute as written. This we have done.

469 Mich. 20, 664 N.W.2d 756, 760 (2003). Responding to a dissenting justice's appeal to common-law premises liability doctrines, the Court further emphasized the point, noting "[t]his whole approach is off-target because the common law no longer controls once the Legislature enacts statutes that preempt it. . . . . That has happened here." *Id.*

For the same reasons, Blackjack is also entitled to summary judgment on plaintiff's claim that Blackjack negligently constructed the fence she impacted following her collision with the snowboarder. Blackjack is immune under the SASA for injuries resulting from collisions with other skiers. Although plaintiff attempts to draw a distinction between those injuries she sustained in the initial collision with the snowboarder and those she sustained when she struck the fence, it really makes no difference. The plain fact is that all of her injuries were caused by the collision with the snowboarder. The only reason she struck the fence is because the snowboarder collided with her. The fact that her injuries may have occurred when she struck the fence into which she was propelled is of no more significance than if they had been caused by slamming into a tree or the ground after

10

the collision. It is the collision with another skier, an acknowledged risk of downhill skiing, that resulted in her injuries.

Even if plaintiff had not collided with another skier and run into the fence on her own, Blackjack would be entitled to immunity. Although not listed in the SASA as one of the structures with which skiers assume the risk of colliding, this does not mean that a fence is not such a structure. The Michigan Supreme Court has held that the SASA's list of hazards inherent in the sport of skiing is intended as illustrative and not exhaustive. "The examples are employed to give the reader guidance about what other risks are held to be assumed by the skier." *Anderson*, 664 N.W.2d at 759. Once a court determines that the hazard is inherent to the sport, the ski operator will be liable only if the hazard was unnecessary or not obvious. *Id.* at 760.

A fence constructed to prevent skiers from falling over an embankment adjacent to a run clearly constitutes an obvious and necessary hazard to skiers, as is clear from the many cases from other jurisdictions with similar statutes.[2] *See Berniger v. Meadow Green-Wildcat Corp.*, 945 F.2d 4 (1st Cir. 1991) (applying New Hampshire law and determining that danger of collision with safety fence an inherent risk assumed as a matter of law by the skier); *Bennett v. Kissing Bridge Corp.*, 794 N.Y.S.2d 538, 17 A.D.3d 990 (N.Y. App. Div. 2005) (ski area owner did not create dangerous condition over and above the usual inherent dangers of skiing when it constructed wooden fence to serve as warning to skiers); *Stone v. Alpine Valley Ski Area*, 135 Ohio App.3d 540, 734 N.E.2d 888 (Ohio Ct. App. 1999) (snowboarder plaintiff that fell and then collided with a fence assumed risk

---

[2] The Michigan Court of Appeals has held in an unpublished decision that safety fencing used by a ski resort to prevent skiers from entering into a drainage area was an inherent danger for purposes of the SASA. *Brodie v. City of Riverview*, No. 187126, 1996 WL 33349353 (Mich. Ct. App. Nov. 19, 1996) (*per curiam*). The court in *Brodie* found that the fence at issue was similar to man-made hazards like snow-making equipment and lift tower components.

11

of striking fence as the risk was inherent to the sport); *see also Hyland v. State*, 752 N.Y.S.2d 113, 300 A.D.2d 794 (N.Y. App. Div. 2002) (holding that plaintiff assumed the risk of injury under New York law where a wooden fence placed at the outer limits of an area of trees and brush, which also marked the intersection of trails, was an open and obvious man-made object incidental to the provision and maintenance of the ski area).

Blackjack's fence is just as obvious and necessary as the time-keeping equipment shack in *Anderson*. Collision with the fence, like collision with the timing shack, is thus a danger that skiers such as plaintiff are held to have accepted as a matter of law. 664 N.W.2d at 760. And just as in *Anderson*, that conclusion ends the inquiry. Having found that the fence was a necessary and obvious hazard, I may not consider whether it could have been less rigid and more forgiving. Nothing in the language of the statute that allows consideration of factors of this sort. *Id.* Indeed, consideration of them is preempted by the SASA, which makes ski operators such as Blackjack immune from liability for injuries caused by such collisions. Blackjack's motion for summary judgment will therefore be granted.

**CONCLUSION**

Jakubovsky has failed to designate facts sufficient to avoid summary judgment. Whether or not the majority or all of her injuries were the result of her impact with the fence, she struck the fence as a direct result of her collision with the snowboarder. Under the SASA, she assumed the risk of any injuries resulting from such a collision and Blackjack is immune. Blackjack did not itself violate the SASA, and plaintiff's common-law claims are preempted. Defendants' motion for

12

summary judgment is therefore **GRANTED**.  The Clerk shall enter judgment in favor of defendants forthwith.

    **SO ORDERED** this <u>  29th  </u> day of December, 2009.

                                    <u> s/ William C. Griesbach         </u>
                                      William C. Griesbach
                                      United States District Judge

13

Case 1:08-cv-00206-WCG   Filed 12/29/09   Page 13 of 13   Document 59